Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HUAWEI DEVICE CO., LTD., and HUAWEI DEVICE USA, INC.,<br><br>*Defendants*. | No. 19-CR-010<br><br>**DEFENDANTS' MOTION TO STRIKE SURPLUSAGE**<br><br>**NOTE ON MOTION CALENDAR:**<br>**August 9, 2019**<br><br>***ORAL ARGUMENT REQUESTED*** |

Defendant Huawei Device Co, Ltd. ("Huawei China") and Huawei Device USA, Inc. ("Huawei USA") (collectively "Huawei Device"), through counsel, hereby move this Court, pursuant to Federal Rule of Criminal Procedure 7(d), to strike as surplusage the irrelevant, inflammatory, and prejudicial allegations in paragraphs 38, 47, and 48 of the Indictment.

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co., Ltd., et al.*, No. 19-CR-010 – Page 1

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

# INTRODUCTION

The Indictment contains two instances of irrelevant, inflammatory, and prejudicial allegations that invite conviction on an improper basis. The Court should strike these allegations from the Indictment.

*First*, the Indictment alleges that following its alleged theft of trade secrets from T-Mobile, Huawei engaged in an internal investigation designed as a "cover-up" to mislead T-Mobile, which the Indictment has charged as obstruction of justice. Ind. ¶ 45. Before describing the alleged obstructive acts, the Indictment purports to identify what "concerns" motivated Huawei Device. Among other things, Paragraph 38 alleges that Huawei Device was "concerned about additional harm to Huawei's reputation because the company had already been the subject of negative publicity regarding the company's past practice of misappropriating proprietary business information and technology." Ind. ¶ 38. The Indictment identifies the sources of the negativity publicity as (1) a report by the U.S. House of Representatives accusing Huawei of being a "threat to national security" that "'may be violating United States laws'" through "'very serious allegations of illegal behavior,'" (2) a 2010 lawsuit by Motorola alleging that Huawei "misappropriated Motorola's proprietary wireless switching technology by acquiring it surreptitiously from Chinese Motorola engineers," and (3) a 2003 lawsuit by Cisco alleging that "Huawei had stolen Cisco's proprietary network router technology and related source code for use in Huawei's own competing routers." *Id.* The government has notified Huawei that the government does not intend to introduce evidence that any Huawei employee working on the internal investigation was aware of these lawsuits; rather, it plans to call an FBI agent to introduce the complaints and describe the resulting negative publicity Huawei received. Such testimony would be wholly improper evidence describing uncharged misconduct that has no place in the Indictment or at trial.

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 2

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

*Second*, following its narrative description of the alleged obstructive acts in Huawei Device's internal investigation, the Indictment alleges that at the same time as Huawei USA's internal investigation, Huawei China issued a corporate policy with a "bonus program to reward employees who stole confidential information from competitors." Ind. ¶ 47.  The Indictment does not allege that this program was related to T-Mobile or in any manner caused or influenced the alleged obstructive acts, and acknowledges that the policy was quickly repudiated by Huawei USA's director of human resources who conducted the internal investigation.  *Id.* ¶ 48.  The Indictment purports to tie the program to this case by alleging:  "The launch of this Huawei China bonus program policy created a problem for Huawei USA because it was in the midst of trying to convince T-Mobile that the conduct in the laboratory was the product of rogue employees who acted on their own and contrary to Huawei's policies."  *Id.* ¶ 48.  This "allegation" is mere argument.  In reality, the alleged bonus program is an unrelated act that should be stricken from the Indictment.

## ARGUMENT

The Court should exercise its discretion to strike paragraphs 38, 47, and 48 of the Indictment as prejudicial and irrelevant surplusage.

### I.     The Court Has Broad Discretion to Strike Surplusage.

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d).  The Court has broad discretion to strike surplusage from an indictment, a determination that may be overturned only for abuse of that discretion.  *United States v. Laurienti*, 611 F.3d 530, 546-547 (9th Cir. 2010); *United States v. Lyman*, 592 F.2d 496, 500 (9th Cir. 1978) (holding overt acts "were properly stricken as surplusage"); *United States v. Espy*, 989 F. Supp. 17, 35 (D.D.C. 1997) ("Fed. R. Crim. P. 7(d) provides the court with wide discretion to strike terms or language that are immaterial or irrelevant to the indictment at

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 3

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

issue."), *aff'd in part and rev'd in part on other grounds*, 145 F.3d 1369 (D.C. Cir. 1998).

"The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *Laurienti*, 611 F.3d at 546-547; *see also* 4-1 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 128 (4th ed. 2012) (Rule 7(d) protects a defendant against prejudicial "unnecessary allegations" inserted into an indictment for "'color' or 'background'" with the hope that these additions will "stimulate the interest of the jurors.").

## II. The Indictment Improperly Accuses Huawei Device of Irrelevant and Prejudicial Uncharged Misconduct.

Courts have consistently stricken as surplusage allegations that "may encourage the jury to draw inferences that the defendants are believed to be involved in activities not charged in the indictment." *United States v. Hubbard*, 474 F. Supp. 64, 82, 83 (D.D.C. 1979) (striking both language insinuating unalleged facts that may "lead the jury to infer accusations of crimes beyond those actually charged" and reference to an occurrence not charged as a substantive offense in the indictment); *see also United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (terms that "could improperly indicate to a jury that the defendant [] [was] charged with offenses and conduct in addition to those actually listed in the indictment" should be stricken from an indictment as irrelevant and prejudicial); *Espy*, 989 F. Supp. at 35 (same).

Courts routinely strike prejudicial language insinuating uncharged misconduct because "[a]nything in the indictment that allows the jury to infer involvement with uncharged crimes . . . is improper." *United States v. Vastola*, 670 F. Supp. 1244, 1255 (D.N.J. 1987), *aff'd in part and rev'd in part on other grounds*, 899 F.2d 211 (3d. Cir.), *vacated*, 497 U.S. 1001 (1990) (citation omitted); *see also Hubbard*, 474 F. Supp. at 83.

For example, in *United States v. Gerlay*, the court held the "likelihood of unfair prejudice or confusion to the jury… [was] great enough to grant the motion to strike." No. 3:09-CR-085,

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 4

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

2009 WL 3872143, at *2 (D. Alaska Nov. 17, 2009). In *Gerlay*, the Defendant was charged with unlawful distribution and dispensing of a controlled substance. *Id.* at *1. This charge required the government to show that the defendant "knowingly and intentionally" caused controlled substances to be dispensed "not for a legitimate medical purpose." *Id.* The Indictment alleged that many years earlier, the defendant admitted in a regulatory proceeding "that he improperly wrote and misused prescriptions for controlled substances" and was subsequently disciplined by a state Board of Medical Examiners. *Id.* The district court struck the allegations as both unnecessary to the government's case and highly prejudicial to the defendant. *Id.*

### A.    Improper Allegations of Uncharged Misconduct in Paragraph 38.

The Indictment contains improper allegations of uncharged misconduct. This case focuses on Huawei Device's alleged theft of trade secrets from T-Mobile, which occurred during two incidents in T-Mobile's laboratory in May 2013. The Indictment alleges conspiracy to commit theft of trade secrets (Count One), attempted theft of trade secrets (Count Two), wire fraud (Counts Three through Nine), and obstruction of justice (Count Ten). Despite these discreet allegations, paragraph 38 introduces three separate and additional allegations of prior misconduct wholly unrelated to the charges.

In a bald conclusion, the Indictment alleges that the following thefts in T-Mobile's laboratory, Huawei Device was "*concerned* about additional harm to Huawei's reputation because the company had already been the subject of negative publicity regarding the company's past practice of misappropriating proprietary business information and technology." Ind. ¶ 38 (emphasis added). Paragraph 38 proceeds to identify three specific instances it characterizes as "example[s]" of such conduct. The Indictment then alleges that in light of the "concerns" in paragraph 38 and other "concerns" in paragraph 37,[1] Huawei Device engaged in obstructive acts

---

[1] Huawei is separately moving to dismiss the obstruction count in Count Ten for failure

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 5

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

to mislead T-Mobile about what happened in its laboratory.

The Court should strike the allegations in paragraph 38 because they accuse Huawei Device of prejudicial uncharged misconduct. Specifically, the Indictment alleges that a U.S. House of Representatives report found that "Huawei posed a potential threat to national security," and "'may be violating United States laws,'" and uncovered "'very serious allegations of illegal behavior' by Huawei." Ind. ¶ 38 (quoting report). It is difficult to imagine more prejudicial allegations of uncharged misconduct. The civil lawsuit allegations are also highly prejudicial because they are characterized as prior instances in which Huawei Device engaged in thefts of intellectual property similar to the conduct charged in the Indictment. Even though a civil complaint contains only one-sided, untested allegations, the jury will necessarily infer that the allegations have merit because they were contained in a lawsuit and conclude that it is more likely that Huawei Device engaged in the charged conduct.

In addition to being prejudicial, the allegations are irrelevant. The Indictment contains no allegations substantiating the claim that the Huawei Device employees involved in its internal investigation were "concerned" about the House of Representatives report or these old civil lawsuits. Indeed, with respect to the civil lawsuits, the government has essentially conceded that no such evidence exists. In a letter responding to Huawei Device's requests for discovery regarding the lawsuit allegations in paragraph 38, the government represented that it does not plan to introduce any evidence that Huawei Device employees were concerned about or focused on the prior civil lawsuits. Instead, the government stated:

> we intend to elicit briefly from a FBI witness that Huawei received unflattering publicity over these two intellectual property lawsuits.

---

to specify the key elements of corrupt intent and nexus to an official proceeding. Instead, the Indictment improperly relies on the bare legal conclusions that Huawei's "concerns" about potential litigation and a grand jury investigation motivated the alleged obstructive acts.

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 6

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

> We intend to show that this publicity, combined with the publicity from the 2012 House report, caused problems for Huawei, including potentially making it more difficult for the company to secure business in the U.S. and other markets. We intend to argue that Huawei's desire to avoid additional bad publicity served as part of the motivation for the company to obstruct justice by issuing the false and misleading internal investigation report, hoping to forestall a full disclosure of the facts in either a civil suit or criminal indictment.
>
> To be clear, we do not intend to offer any evidence about the lawsuits, apart from the fact that Huawei had been sued, a general description of the allegations, and that the company received bad publicity.

Ex. A, Letter from Government Counsel to Huawei Device's Counsel (Apr. 15, 2019) (declining to produce any discovery regarding the two civil lawsuits other than the complaints). The government's letter confirms that the allegations regarding the House report and the civil lawsuits are purely argumentative and have no bearing on the actual events in this case.[2] They are intended only to poison the jury. Further, these allegations cannot serve as a factual predicate for a violation of Section 1512(c)(2) because they are unconnected to any official proceeding. Conduct motivated by a desire to avoid "negative publicity" is a far cry from conduct undertaken with corrupt intent to influence or obstruct an official proceeding. These allegations are irrelevant.

This conclusion has even already been confirmed by an evidentiary ruling in T-Mobile's prior civil litigation against Huawei Device for these same alleged thefts of trade secrets. In that case, T-Mobile sought to admit the same evidence regarding the House report and the earlier trade secrets misappropriation lawsuit by Cisco against Huawei Device. Judge Jones excluded

---

[2] The government's proposed testimony would be wholly improper. Testimony from an FBI agent about newspaper articles and one-sided civil complaints would be pure hearsay. It also does not come close to meeting the Rule 403 balancing test. *See* Section II, *infra*; *Go-Video, Inc. v. Motion Picture Ass'n of Am.*, 977 F.2d 588 (9th Cir. 1992) (affirming district court ruling denying admission of newspaper article asserting the existence of the charged conspiracy involving the defendant).



the evidence from trial, holding that "T-Mobile makes no effort to establish what purpose these materials would serve other than to impugn Huawei USA's character in violation of Rule 404." *T-Mobile USA, Inc. v. Huawei Device USA, Inc., et al.*, No. C14-1351-RAJ (W.D. Wa.), ECF 408-1, Order at 15.  The same materials are equally irrelevant and even more prejudicial in this criminal case and should be stricken from the Indictment.

        **B.**        **Improper Allegations of Uncharged Misconduct in Paragraphs 47 and 48.**

The Court should similarly strike the allegations in paragraph 47 and 48 because they accuse Huawei Device of prejudicial uncharged misconduct that is irrelevant to the charged offenses.  Following the narrative description of the alleged acts of obstruction in the Indictment, two paragraphs describe a "bonus program" allegedly issued by Huawei China in which employees could earn bonuses for supplying information about Huawei Device's competitors. Ind. ¶¶ 47-48.  The memorandum was dated July 10, 2013, two months after the events in T-Mobile's laboratory.  *Id.* ¶ 47.  The Indictment attempts to connect the memorandum to the charged offenses by stating that the program "created a problem for Huawei USA because it was in the midst of trying to convince T-Mobile that the conduct in the laboratory was the product of rogue employees who acted on their own and contrary to Huawei's policies." *Id.* ¶ 48.  The Indictment alleges that Huawei USA's Director of Human Resources, who also conducted the internal investigation, immediately repudiated the memorandum.  *Id.*

      The allegations about the bonus memorandum are irrelevant.  The alleged theft of trade secrets from T-Mobile preceded the issuance of the memorandum by two months and thus were not even arguably motivated by the "bonus program."  Although the Indictment alleges that the memorandum was issued at the same time as Huawei Device was conducting the internal investigation, that coincidence does not render the memorandum relevant to the charges. Further, any relevancy is negated by Huawei USA's Director of Human Resources' response to



the memorandum, stating "here in the USA we do not condone nor engage in such activities and such behavior is expressly prohibited by Huawei USA's company policies." Ind. ¶ 48.

These allegations serve only to insinuate that Huawei Device condoned and even incentivized theft of trade secrets, like those charged in the Indictment. Thus, the allegation is not only irrelevant, it is inflammatory and prejudicial to the Defendants. *See Hubbard*, 474 F. Supp. at 83 (granting motion to strike as "prejudicial and irrelevant" references to defendant's prior guilty plea for a charge not alleged in the pending indictment). Far from a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), paragraphs 47 and 48 contain the government's argumentative characterizations of unrelated events. *See* Ind. ¶ 47 ("[A]t the same time that Huawei China and Huawei USA were falsely claiming that the conduct of A.X. and F.W. was 'isolated,' constituted a 'moment of indiscretion,' and was contrary to Huawei's corporate policies, Huawei China launched a formal policy instituting a bonus program to reward employees who stole confidential information from competitors."); *id.* ¶ 48 ("The launch of this Huawei China bonus program policy created a problem for Huawei USA."). These allegations also reveal that the government's purpose for introducing this memorandum is propensity—*i.e.*, to show the conduct in T-Mobile's lab was not an "isolated…moment of indiscretion." Ind. ¶ 47.

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 9

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

# CONCLUSION

For the reasons set forth above, the Court should grant this motion and strike as surplusage the irrelevant and prejudicial paragraphs 38, 47, and 48 in the Indictment.

Dated: August 1, 2019

Respectfully submitted,

**YARMUTH LLP**

By: *s/ Robert Westinghouse*
Robert Westinghouse, WSBA No. 6484
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Telephone: (206) 516-3800
Fax: (206) 516-3888
rwestinghouse@yarmuth.com

**STEPTOE & JOHNSON LLP**

James F. Hibey (*pro hac vice*)
Brian M. Heberlig (*pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
jhibey@steptoe.com
bheberlig@steptoe.com

*Attorneys for Defendants Huawei Device Co., Ltd., and Huawei Device USA, Inc.*

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 10

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for the Government**

Todd Greenberg
Thomas M. Woods
Siddharth Velamoor
U.S. Attorney's Office (Sea)
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Tel: 206.553.7970
Todd.Greenberg4@usdoj.gov
Thomas.Woods2@usdoj.gov
Siddharth.Velamoor@usdoj.gov

DATED: August 1, 2019, at Seattle, Washington.

*s/ Vassie Skoulis*
Vassie Skoulis, Legal Assistant

DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 11

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

# Exhibit A to Defendants' Motion to Strike Surplusage



*Please reply to:*
*Thomas M. Woods*
*Assistant United States Attorney*
*Direct Line: (206) 553-4312*

April 15, 2019

**By Electronic Mail**

Brian Heberlig, Esq.                    Robert Westinghouse
James F. Hibey, Esq.                    Yarmuth Wilsdon PLLC
Steptoe & Johnson LLP

    Re:   *United States v. Huawei Device Co. et al.*
           No. CR19-0010RSM, USDC, W.D. Washington

Dear Counsel:

    In your initial discovery letter, dated March 15, 2019, you requested, among other things, the following two categories of documents:

> 5.    All documents relating to the allegation: "In 2003, Cisco sued Huawei alleging that Huawei had stolen Cisco's proprietary network router technology and related source code for use in Huawei's own computing routers." Indictment ¶ 38.
>
> 6.    All documents relating to the allegation: "In 2010, Motorola sued Huawei alleging that it had misappropriated Motorola's proprietary wireless switching technology by acquiring it surreptitiously from Chinese Motorola engineers." *Id.*

    We previously produced to you copies of the civil complaints filed by Cisco and Motorola against Huawei that are referenced in these requests. *See* Bates CR19_000001 – 187. For the reasons that follow, we believe that the production of the two complaints satisfies our discovery obligations with respect to these topics.

    At trial, we intend to offer only limited evidence regarding the Cisco and Motorola lawsuits. Specifically, we intend to elicit briefly from a FBI witness that Huawei received unflattering publicity over these two intellectual property lawsuits. We intend to show that this publicity, combined with the publicity from the 2012 House report, caused problems for Huawei, including potentially making it more difficult for the company to secure business in the U.S. and other markets. We intend to argue that Huawei's desire to avoid additional bad publicity served as part of the motivation for the company to obstruct justice by issuing the false and misleading internal investigation report, hoping to forestall a full disclosure of the facts in either a civil suit or criminal indictment.

To be clear, we do not intend to offer any evidence about the lawsuits, apart from the fact that Huawei had been sued, a general description of the allegations, and that the company received bad publicity. We do not intend to argue that the allegations were in fact meritorious, that they were proven to be so, or that Huawei somehow admitted any part of allegations as the result of the dispositions of the cases. We also do not intend to call any witnesses from either Motorola or Cisco at trial.

In light of the limited way in which the Motorola and Cisco lawsuits will be used at trial, the production of the civil complaints satisfies our discovery obligations. Any additional material, including investigatory materials about the two incidents, would not be discoverable, particularly given the fact that the truth of the underlying allegations will not be at issue in the trial.

Please feel free to contact me with any questions or concerns.

Sincerely,

ANNETTE L. HAYES
First Assistant United States Attorney
(Acting Under Authority Conferred by
28 U.S.C. § 515)

/s Thomas M. Woods
TODD GREENBERG
THOMAS M. WOODS
SIDDHARTH VELAMOOR
Assistant United States Attorneys

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

v.

HUAWEI DEVICE CO., LTD., and
HUAWEI DEVICE USA, INC.,

*Defendants*.

No. 19-CR-010

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO STRIKE SURPLUSAGE IN PARAGRAPHS 38, 47, AND 48 OF THE INDICTMENT**

The Court has reviewed Defendants Huawei Device Co., Ltd.'s ("Huawei China"), and Huawei Device USA, Inc.'s ("Huawei USA") (collectively, "Huawei Device") Motion to Strike Surplusage in Paragraphs 38, 47, and 48 of the Indictment.

The Motion is granted for the reasons stated by Huawei Device.

Accordingly, Paragraphs 38, 47, and 48 of the Indictment are stricken in their entirety, and the government shall file an amended version of the Indictment reflecting this Order.

IT IS SO ORDERED.

_____
Ricardo S. Martinez
Chief United States District Judge

[PROPOSED] ORDER GRANING DEFENDANTS' MOTION TO STRIKE SURPLUSAGE
*U.S. v. Huawei Device Co. Ltd., et al.*, No. 19-CR-010 – Page 1

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888